# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:03CV78-02-V
# (5:99CR71-5-V)

**RUSSELL GARNET TURNER,** )
    Petitioner, )
                       )
    v. )                  <u>ORDER</u>
                       )
**UNITED STATES OF AMERICA,**)
    Respondent. )
_____)

**THIS MATTER** comes before the Court on the petitioner's "Motion to Vacate, Set Aside, Or Correct Sentence . . . ," filed May 27, 2003 (document # 1); on the "Government's Answer . . . And Motion For Summary Judgment," filed August 21, 2003 (document # 4); on the "Petitioner's Response To Government's . . . Motion And Motion For An Evidentiary Hearing," filed September 2, 2003 (document # 6); on the petitioner's document captioned as "Sworn Declaration . . . And Counter Motion For Summary Judgment," filed October 10, 2003 (document #10); and on the petitioner's "Notice of Supplemental Authority . . . " (that is, his <u>de facto</u> motion to amend his Motion to Vacate), filed September 24, 2004 (document # 11).

For the reasons stated herein, and for the further reasons stated in the government's Motion for Summary Judgment and supporting documents, the petitioner's Motion for an Evidentiary Hearing will be <u>denied</u>; his <u>de facto</u> motion to amend will be

denied; the government's Motion for Summary Judgment will be granted; the petitioner's Counter Motion for Summary Judgment will be denied; and this Motion to Vacate will be denied and dismissed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 1999, a multi-count Bill of Indictment was filed, charging the petitioner (along with five other persons) with several violations of federal law. In particular, the petitioner was charged with conspiracy to possess with intent to distribute quantities of powder cocaine and cocaine base in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One); and he was charged with possession with intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. §841(a)(1) (Count Eight). Also on that date, the government filed an Information pursuant to 21 U.S.C. §841(b), noting that the amount of cocaine base involved in Count One was "in excess of 1.5 kilograms...."

Thereafter, on November 30, 1999, the government filed a "Notice of Intention To Seek Enhanced Penalties - 21 U.S.C. §§841 [and] 851." By that Notice, the government asserted that the petitioner previously had sustained four drug convictions in the North Carolina State court system; and that upon his conviction for either of the two pending charges, he could be subject to an enhanced penalty (mandatory life imprisonment) as set forth under 21 U.S.C. §841 (b)(1)(A).

Next, on March 2, 2000, the petitioner entered into a written Plea Agreement with the government. By the terms of that Agreement, the petitioner promised to plead guilty to the conspiracy charge set forth in Count One in exchange for the government's dismissal of Count Eight.

In addition, the parties' Agreement noted the petitioner's stipulations that the amount of cocaine base for which he could be held responsible was "more than 50 grams but less than 150 grams"; that the corresponding Offense Level for his offense was 32; that the statutory maximum term which he was facing was a mandatory life sentence; and that there was a factual basis for his guilty plea.

However, that Agreement also contained a provision by which counsel for the government agreed, in exchange for the petitioner's "complete compliance with all terms and conditions of [his] plea agreement . . . [, to] withdraw the §851 Notice." The government also agreed to recommend up to a 3-point offense level reduction, provided the petitioner acknowledged the full nature and extent of all relevant criminal conduct. Similarly, the government agreed to seek a downward departure for the petitioner, but only in the event that he provided substantial assistance to its investigators. Regarding his post-conviction rights, the petitioner agreed to waive his right to directly appeal his case on any ground, or to bring a collateral challenge to his

3

conviction and sentence on any grounds other than ineffective assistance of counsel and prosecutorial misconduct.

Also on March 2, 2000, the petitioner appeared before the Court for his Plea & Rule 11 proceeding. On that occasion, the Court engaged the petitioner in its standard, lengthy colloquy to ensure that his guilty plea was being knowingly and voluntarily tendered.

By his answers, the petitioner established numerous facts for the Court. Initially, the petitioner swore that he understood that he was under oath and was "required to give truthful answers to the questions" which he was being asked; that he was <u>not</u> "under the influence of alcohol, medicines or drugs of any sort"; and that his mind was clear and he understood that he was in Court for the purpose of entering a guilty plea which likely could not "later be withdrawn." Furthermore, by his sworn affirmations, the petitioner established that he had received a copy of the subject Indictment; that he had fully discussed that document along with other relevant matters with his attorney; and that he understood that he was facing a maximum term of life imprisonment.

Most critically with respect to the instant Motion, the petitioner swore that he was pleading guilty and wanted the Court to accept his plea because he, in fact, was guilty of the subject offense; that no one had made him any "promises of leniency or a

4

light sentence" in order to induce his plea; that he understood that the sentence he ultimately received might be different from that which counsel had estimated; and that he was satisfied with the services of his attorney. In fact, when asked about counsel, the petitioner made a long statement saying, in part, "I want to thank God for allowing me and blessing me with an attorney that was good and treating me with respect as a him being . . . [a]nd he was there for me. And the things that I didn't understand, he helped me to understand it. . . . He really worked with me and I thank God for that."

Next, on or about February 12, 2001, the petitioner wrote to the Court and asked to be allowed to withdraw his guilty plea on the ground that his drug abuse had prevented him from understanding that he had taken responsibility for involvement with 50 to 150 grams of cocaine base and not some lesser amount. Thereafter, defense counsel followed-up the petitioner's pro-se request to withdraw with a formal "Motion To Withdraw Plea," filed June 7, 2001. On August 10, 2001, the government filed its response, arguing that the petitioner had failed to satisfy any of the six factors which dictate the circumstances under which a guilty plea can be withdrawn.

On August 13, 2001, the Court held a hearing on the petitioner's Motion to Withdraw Plea. During that proceeding, the petitioner testified that at the time he entered into his Plea

5

Agreement, he was so heavily influenced by his addiction that he had not fully understood the nature of that Agreement.  In sum, the petitioner claimed that his addiction had caused him to pretend that he understood the significance of his Plea Agreement.  As a result, the petitioner asked to be allowed to enter a new guilty plea by which he would be held accountable for involvement with only 1.6 grams of cocaine base--that is, the amount of drugs that he was charged with having sold under Count Eight, instead of the 50 to 150-gram amount for which he was being held accountable as a result of his guilty plea to the conspiracy charge set forth under Count One.

However, upon cross-examination, the petitioner conceded that he is a high school graduate; that he had been placed under oath prior to answering the Court's questions during his Plea hearing; that he had not used drugs for months prior to having entered into his Plea Agreement; and that during his Plea hearing, he had acknowledged that the amount of cocaine base which was known to him, or which was reasonably foreseeable to him was between 50 and 150 grams of cocaine base.

Consequently, based upon the foregoing, the Court found that the petitioner had failed to demonstrate that he should be allowed to withdraw his guilty plea.  More specifically, the Court concluded that there was "no credible evidence that his plea was not knowing <u>and</u> voluntary" (emphasis added).

Having determined that the guilty plea could not be withdrawn, the Court then commenced a Factual Basis & Sentencing Hearing for the petitioner. At that time, defense counsel advised that he had no objections to the Pre-Sentence Report. The prosecutor then informed the Court--presumably due to the petitioner's failure to honor her request that he testify in an unrelated case and his failure to comply with the conditions of his pre-trial release contract--that she was not going to waive her right to proceed under the §851 Notice. However, the prosecutor also advised the Court that based upon the case of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the petitioner's guilty plea and his criminal history exposed him to a term of 360 months, not life imprisonment. Therefore, after hearing from counsel for the parties, and from the petitioner and his mother, the Court imposed a sentence of 360 months imprisonment.

The petitioner timely appealed his case to the Fourth Circuit Court of Appeals, arguing that the Court had abused its discretion in denying his Motion to Withdraw Plea. <u>See</u> <u>United States v. Turner</u>, No. 01-4706, slip op. at 2 (4th Cir. Aug. 30, 2002). In addition, the petitioner filed a <u>pro-se</u> brief, challenging the validity of his guilty plea and other substantive matters, and arguing that trial and appellate counsel had been ineffective in several respects. <u>Id</u>. In response, the government sought to dismiss the petitioner's appeal on the basis

7

of the waiver clause set forth in his Plea Agreement. Id.

After reviewing the petitioner's Plea Agreement and the transcript from his Plea & Rule 11 proceeding, the Court of Appeals concluded that the petitioner "knowingly and intelligently waived his right to appeal." Id. Moreover, the appellate Court stated that it had "reviewed [the petitioner's] pro se claims challenging the validity of the plea agreement due to counsel's actions and [found] them to be without merit." Id. Likewise, that Court found that the petitioner could not prevail on his claims against counsel because the record did not conclusively establish ineffectiveness. Id. at 3.

Accordingly, the petitioner's appeal was dismissed in part, and his case was affirmed in part. Id. Then, on March 24, 2003, the U.S. Supreme Court denied the petitioner's Petition for a Writ of Certiorari, thereby ending his pursuit of direct review.

Undaunted by his lack of success, on May 27, 2003, the petitioner returned to this Court on the instant Motion to Vacate. By this Motion, the petitioner again challenges his guilty plea, this time claiming that it was unlawfully induced by trial counsel's false promise of a ten-year sentence. In addition, the petitioner argues that this Court abused its discretion in calculating his sentence on the basis of the drug quantity provided by the Pre-Sentence Report.

The petitioner's Motion also set forth a third claim that

the appellate court had erred in denying his Motion to Supplement his appeal. However, after conducting its initial review, this Court recognized that the petitioner's third claim was not cognizable on habeas review. Therefore, the Court summarily dismissed that claim, but directed the government to respond to the other two allegations (see document # 3).

On August 21, 2003, the "Government's Answer To Petitioner's Motion And Motion For Summary Judgment" was filed. By that combined document, the government argues that the petitioner's belated claim that his plea was unlawfully induced by a secret promise of a 10-year sentence is wholly belied by the record evidence; and that his challenge to the trial Court's sentencing calculations is precluded both by the waiver provision set forth in his Plea Agreement and by Fourth Circuit's affirmation of his sentence on direct appeal.

On September 2, 2003, the "Petitioner's Response To Government's Answer . . . And Motion For An Evidentiary Hearing . . . " was filed. Such Response merely addresses the government's argument concerning the validity of his guilty plea. As to that matter, the petitioner implausibly asserts that the information concerning his Rule 11 colloquy which the government highlighted in its Answer actually supports his claim, in that such evidence "shows that [he] went out of his way to follow his counsel's advice and to do anything he could to make sure the court accepted

9

the agreement he thought had been made between him and the government by way of his attorney." The petitioner also claims that he had no way of knowing during that proceeding that his attorney had lied to him about his sentence. The petitioner's Response also asks for an evidentiary hearing on his claims.

On October 10, 2003, the petitioner filed a document captioned as a "Sworn Declaration Of Russell G. Turner And Counter Motion For Summary Judgment." There, the petitioner argues that the government's Motion for Summary Judgment should be denied because it is not supported with sworn affidavits, the Motion did not dispute his allegation of counsel's outside inducement, and Rule 56(e) "has no effect in these proceedings as far as the government is concern[ed]." Further, the petitioner argues that he is not obligated to produce sworn affidavits to support his claims, and that, in light of certain U.S. Supreme Court precedent, this Court has a duty to ask counsel to provide an explanation for the challenged conduct.

Last, on September 24, 2004, the petitioner filed a "Notice of Supplemental Authority In Support of Motion . . . ," noting the ruling in Blakely v. Washington, 542 U.S. 296 (2004), and asking the Court to: (a) "[r]esentence him to the alleged 50 grams but less than 150 grams or the 1.6 grams" which he "admitted to and/or signed off in his Plea Agreement at page one (1), and not the level 34 he was erroneously sentenced under"; (b)

10

"[r]esentence [him] without the enhancement under 21 U.S.C. Section 851" based upon the "government's waiver of right not to enhance petitioner under 851 . . . "; or (c) allow him to withdraw his Plea Agreement on the grounds that the Court violated that Agreement when it calculated his sentence using a drug quantity which was not set forth in the Indictment and when it imposed an enhanced sentence under §851 in contravention of the Agreement's waiver provision.

Now, however, after having carefully considered the parties' arguments and the relevant legal precedent, the Court finds that the petitioner is not entitled to any relief on his claims. That is, the Court finds that the instant record--and in particular, the petitioner's damaging sworn statements and concessions--makes it clear that counsel was not deficient; and that even if counsel's performance somehow was deficient, the petitioner has failed to show any resulting prejudice.

## II. ANALYSIS

### A. The petitioner's claim of an invalid plea is wholly belied by the record evidence.

By his first claim, the petitioner alleges that his guilty plea is invalid because it was unlawfully induced by trial counsel's extraneous promise that he would receive only a ten-year sentence, rather than whatever term was called for either by the relevant statute(s) and/or the Sentencing Guidelines. In addition, the petitioner asserts that counsel was ineffective for

11

having made such false promise.

Turning first to the question of the validity of his guilty plea, the law is clear that once the court conducts a Rule 11 colloquy and finds the plea to be knowingly and voluntarily entered, absent compelling reasons to the contrary, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established. Via v. Superintendent, Powhatan Corr. Ctr., 643 F.2d 167, 173-74 (4th Cir. 1981). Indeed, a defendant's sworn plea statements made during a Rule 11 proceeding "constitute a formidable barrier" to their subsequent attack. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

To put it another way, "a defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity." Id. at 74. In United States v. Lemaster, 403 F.3d 216, 221-23 (4th Cir. 2005), the Fourth Circuit affirmed the summary dismissal of a Motion to Vacate which challenged the validity of a guilty plea on grounds which were inconsistent with statements made during the Rule 11 hearing. In fact, the Court stated that "in the absence of extraordinary circumstances . . . allegations in a §2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." Id. at 221. See also United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991) (statements

made during Rule 11 proceedings constitute strong evidence of voluntariness of plea).

Applying the foregoing principles to the facts of the instant case leads this Court to the conclusion that this claim is baseless. That is, in addition to all of the other problems with the claim, the Court notes that this is not the first time the petitioner has attempted to attack the validity of his guilty plea--albeit on other grounds. As was noted, in his first attack on his guilty plea, the petitioner raised the unrelated allegation that he had not fully comprehended the extent of the conduct to which he was pleading. However, the Court rejected that claim due to the petitioner's failure to present "credible evidence" that his plea was anything other than knowingly and voluntarily entered. Therefore, given that the petitioner's new challenge to his plea is no more credible or better supported than his first, there simply is no reason why the Court should grant relief on it.

Furthermore, the record clearly establishes that the petitioner swore that he, in fact, is guilty of the matter to which he pled; and that he understood that his guilty plea exposed him to a term of up to life imprisonment. The record also reflects the petitioner's sworn acknowledgment under his Plea Agreement that at the time that he was entering his guilty plea, his sentence had not yet been determined by the Court; and that "any

estimate from any source, including defense counsel, of the likely sentence" was merely a "prediction rather than a promise . . . ."  Most critically, the record includes the petitioner's sworn representation that no one had threatened him or made him any promises of leniency in order to induce his guilty plea.  Consequently, the petitioner's attempt to circumvent the effect of those sworn statements on the basis of these belated, self-serving and unsupported allegations must fail.

Moreover, as to the petitioner's argument that counsel was ineffective for having unlawfully induced his plea, suffice it to say, he also cannot prevail on that claim.  To put it simply, the petitioner cannot establish either deficient performance or prejudice on this record.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby.  Strickland v. Washington, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v.

14

Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

Most importantly, a petitioner who alleges ineffective assistance following entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea claim of ineffective assistance of counsel as

follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In the instant case, the petitioner has not stated, or even suggested that but for counsel's alleged error he would not have pled guilty and would have insisted upon going to trial. On the contrary, the petitioner has continuously admitted that he was guilty of drug dealing--albeit with the excuses that he was not involved with as much as the amount to which he stipulated, and that he only sold drugs as a means of supporting his own habit. Nevertheless, such admissions fall far short of an assertion that but for counsel's errors, the petitioner would have demanded a trial.

Last, with respect to this issue, the record establishes that the petitioner was benefitted by counsel's assistance. For instance, counsel's negotiations secured a sentence which was based upon the petitioner's involvement with 50 to 150 grams of cocaine base, rather than with "in excess of 1.5 kilograms of cocaine base" as was asserted in the §841 Information.

Defense counsel also successfully negotiated for provisions

16

in the Plea Agreement which would have entitled the petitioner to avoid the §851 enhancements, and to earn a reduced sentence for his substantial assistance. However, once the petitioner resumed his drug use and otherwise violated the conditions of his pre-trial release contract, and once he failed to provide substantial assistance, the government no longer was obligated to honor the Agreement's §851 waiver provision or to seek a downward departure. Ultimately, it is clear that the petitioner received a 360-month sentence due to his own criminal conduct and poor choices, not because of any deficiency in counsel. Therefore, this claim must be rejected in its entirety.

> **B. The petitioner has waived his right to review of any claim other than those alleging ineffective assistance of counsel or prosecutorial misconduct.**

In addition to the foregoing, the petitioner argues that the trial Court erred in calculating his sentence based upon the drug quantity which was set forth in his Pre-Sentence Report. However, as was noted in the procedural history of this case, the petitioner entered into a written Plea Agreement with the government, whereby he waived certain of his rights. In particular, acknowledging that he had various appellate rights, the petitioner "waive[d his] right to contest either the conviction or the sentence in any . . . post-conviction action, including any proceeding under 28 U.S.C. §2255." Although this waiver does not apply to claims of ineffective assistance of counsel and/or

17

prosecutorial misconduct, it does stand as an absolute bar to the instant sentencing challenge.

Indeed, the Fourth Circuit repeatedly has approved the knowing and voluntary waiver of a defendant's appellate rights. See, e.g., United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Davis, 954 F.2d 182, 185-86 (4th Cir. 1992); United States v. Wessells, 936 F.2d 165 (4th Cir. 1991); and United States v. Wiggins, 905 F.2d 51, 52-54 (4th Cir. 1990) (defendant may waive right to appeal, just as he may waive more fundamental rights such as the right to counsel and the right to a jury trial). Consequently, because the Fourth Circuit already had determined that the waiver provision set forth in the petitioner's Plea Agreement is valid and enforceable and this claim does not fall within either of that provision's two exceptions, such claim must be summarily dismissed.

In addition, the Court notes that even if this claim were not barred by the subject waiver provision, it still would be barred from the Court's review. As was earlier noted, the petitioner's challenge to the Court's sentencing calculations already was rejected by the Fourth Circuit on direct appeal, and there has been no favorable intervening change of law concerning the issue. Therefore, the petitioner plainly is not entitled to now re-litigate this matter. See Davis v. United States, 417 U.S. 333, 342 (1974); and Boeckenhaupt v. United States, 537 F.2d

1182 (4th Cir.), cert. denied, 429 U.S. 863 (1976).

Finally, to the extent that the petitioner's Notice of Supplemental Authority is an attempt to raise a claim under Blakely and its related body of law, such claim also is barred. Indeed, notwithstanding that this claim clearly is time-barred under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, that the principles from Blakely and its line of reasoning cannot be retroactively applied in a collateral proceeding such as this, and that Blakely is not even implicated since the petitioner ultimately was sentenced solely on the basis of his prior criminal record and his involvement with a minimal amount of drugs, this claim still is not cognizable in any event. That is, this Blakely claim--like the petitioner's challenge to the Court's sentencing calculations--is barred by the valid and enforceable waiver provision set forth in the petitioner's Plea Agreement.

### III. **CONCLUSION**

On the record before the Court, the petitioner has failed to establish that his guilty plea was unlawfully induced by counsel, or that counsel was otherwise ineffective in this case. Moreover, the petitioner's other allegations are barred for numerous reasons, including his waiver of those matters. Accordingly, the government's Motion for Summary Judgment must be granted.

## IV. ORDER

**NOW, THEREFORE, IT HEREBY IS ORDERED:**

1. That the petitioner's Motion for an Evidentiary Hearing (document # 6) is **DENIED**;

2. That the petitioner's Notice of Supplemental Authority, that is, his <u>de facto</u> motion to amend (document # 11) is **DENIED**;

3. That the government's Motion for Summary Judgment (document #4) is **GRANTED**;

4. That the petitioner's Counter Motion for Summary Judgment (document # 10) is **DENIED**; and

5. That the petitioner's Motion to Vacate is **DENIED** and **DISMISSED.**

**SO ORDERED.**

Signed: August 21, 2006

Richard L. Voorhees
United States District Judge